United States District Court
Southern District of Texas
**ENTERED**
July 10, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DANTE TRICE, ET AL., § § Plaintiffs. § § VS. § § PEARLAND INDEPENDENT § SCHOOL DISTRICT, ET AL., § § Defendants. § | CIVIL ACTION NO. 3:19–CV–00286 |

## MEMORANDUM AND RECOMMENDATION

Before me are three pending motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1): (1) Defendant Tony Barcelona's Motion to Dismiss (Dkt. 49); (2) Defendant Helen Day's Motion to Dismiss (Dkt. 50); and (3) Defendant Jeanette Peterson's Motion to Dismiss (Dkt. 51).[1]  Having considered the Motions to Dismiss, responsive briefing, and applicable law, I recommend that the Motions to Dismiss be **GRANTED**.

## BACKGROUND[2]

In April 2019, J.T., an African-American seventh-grader at Berry Miller Junior High School in Pearland Independent School District ("Pearland ISD"), was reprimanded for wearing a haircut which, according to school officials, violated the school's dress code.

---

[1] I collectively refer to all three motions as "Motions to Dismiss."

[2] For a more detailed background, see my earlier Memorandum and Recommendation, dated March 16, 2020.  *See Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 1557750, at *1 (S.D. Tex. Mar. 16, 2020).

According to the First Amended Complaint, Assistant Principal Tony Barcelona ("Principal Barcelona") gave J.T. two disciplinary options: (1) be assigned in-school suspension for an indeterminate length of time; or (2) color in his hair's design line. J.T. selected the second option and was provided a jet-black Sharpie to color in the design line. Principal Barcelona allegedly oversaw the coloring while Discipline Clerk Helen Day ("Discipline Clerk Day") and teacher Jeanette Peterson ("Peterson") purportedly both participated in coloring J.T.'s scalp with the permanent marker.

J.T. and his parents (collectively, "Plaintiffs") filed this lawsuit against Pearland ISD, Principal Barcelona, Discipline Clerk Day, and Peterson, alleging constitutional and statutory claims under federal law and an assault claim under Texas law. In an earlier round of motions to dismiss, the parties sought dismissal of the entire suit on various grounds. In the end, "only J.T.'s state law assault claim against Defendants Helen Day, Tony Barcelona, and Jeanette Peterson survive[d]," and J.T.'s parents remained only in their representative capacities. *Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 1667748, at *1 (S.D. Tex. Apr. 1, 2020).

Principal Barcelona, Discipline Clerk Day, and Peterson (collectively, the "Individual Defendants") now move to dismiss Plaintiffs' remaining assault claim, arguing that I lack subject-matter jurisdiction based on Section 101.106(f) of the Texas Civil Practice and Remedies Code.[3]

---

[3] Principal Barcelona also contends that I lack subject-matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies under Section 22.0514 of the Texas Education Code. *See* Dkt. 49 at 5–7. Because I find the Individual Defendants' argument concerning Section 101.106(f) of the Texas Civil Practice and Remedies Code dispositive, I do not reach this issue.

## RULE 12(b)(1) STANDARD[4]

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a federal court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). District courts may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986). "The party or parties asserting jurisdiction . . . have the burden to demonstrate that subject-matter jurisdiction exists." *Palacios v. Dep't of Homeland Sec.*, 434 F. Supp. 3d 500, 505 (S.D. Tex. 2020).

## DISCUSSION

As explained above, Plaintiffs allege an assault claim against the Individual Defendants under Texas state law. The Individual Defendants move to dismiss this claim because they believe that they are entitled to statutory immunity under Section 101.106(f) of the Texas Civil Practice and Remedies Code. I agree.

---

[4] Plaintiffs argue that Rule 12(b)(6) applies to these Motions to Dismiss. Plaintiffs are mistaken because "an employee's motion to dismiss under § 101.106(f) challenges the trial court's subject-matter jurisdiction." *Alvarado v. Tex. Health & Human Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2019 WL 6876499, at *3 (W.D. Tex. Dec. 17, 2019) (internal quotation marks and citation omitted).

3

A.     **TEXAS CIVIL PRACTICE AND REMEDIES CODE § 101.106(f)**

Historically, "public employees (like agents generally) have always been individually liable for their own torts, even when committed in the course of employment." *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011) (footnote omitted). This meant that they, like anybody else, could be sued in their individual capacities for their tortious acts while at work. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009). In 2003, however, the Texas legislature altered this common-law scheme when it amended the Texas Tort Claims Act to add Section 101.106(f) of the Texas Civil Practice and Remedies Code. *See Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019). This amendment limited an injured party's right to sue a governmental employee in their individual capacity for a tortious act:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

As the Texas Supreme Court succinctly explained, Section 101.106(f) provides a governmental employee with statutory immunity from suit when he or she is sued for a tort that "(1) is 'based on conduct within the general scope of the employee's employment' and (2) 'could have been brought under the Act against the governmental unit.'" *Garza*, 574 S.W.3d at 400 (quoting TEX. CIV. PRAC. & REM. CODE § 101.106(f)) (brackets omitted).

4

Case 3:19-cv-00286 Document 58 Filed on 07/10/20 in TXSD Page 5 of 9

If these two elements are met, "[S]ection 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct," thereby requiring the dismissal of such claims brought against the public employee. *Id.* at 399. In other words, Section 101.106(f) "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer." *Id.* at 400.

### 1. General Scope of the Employee's Employment

When considering the first element of Section 101.106(f), the Texas Supreme Court has offered the following guidance:

> [T]he critical inquiry is whether, when viewed objectively, a connection exists between the employee's job duties and the alleged tortious conduct. Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort. For purposes of section 101.106(f), the employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities.

*Id.* at 401 (footnotes, internal quotation marks, and brackets omitted).

In this case, there can be no dispute that the Individual Defendants' interaction with J.T.—i.e., disciplining him for an alleged dress code violation—occurred while they were acting as employees of Pearland ISD. Plaintiffs expressly alleged that the Individual Defendants worked for Pearland ISD and colored J.T.'s scalp during school hours because they believed his "haircut violated the Pearland ISD dress code policy." Dkt. 14 at 2. Plaintiffs have never suggested that disciplining a student for violating the school dress code was not among the Individual Defendants' job duties. Thus, as I explained in my earlier Memorandum and Recommendation, accepting the allegations in the live complaint

5

as true and viewing them in the light most favorable to Plaintiffs, "the sum of J.T.'s claim is that Defendants were all acting in the course and scope of their employment." *Trice*, 2020 WL 1557750, at *11 n.16. Plaintiffs did not challenge my determination in their objections to my earlier Memorandum and Recommendation. *See* Dkt. 45. Plaintiffs hardly challenge my understanding of their allegations in responding to the instant Motions to Dismiss.[5]

In my view, only one portion of Plaintiffs' response is arguably relevant to Section 101.106(f)'s first element: Plaintiffs' argument that "coloring the scalps of a child with poisonous permanent ink while laughing [is] not in the general scope of [the Individual] Defendants' job" because "[n]owhere in the Pearland ISD's disciplinary process does it mention coloring a child's scalp as an allowable disciplinary measure." Dkt. 54 at 5. Importantly, this argument does not actually challenge whether a connection exists between the Individual Defendants' job duties and the alleged tortious conduct. In other words, Plaintiffs do not dispute that the Individual Defendants, in their roles as employees of Pearland ISD, engaged with J.T. based on his alleged dress code infraction. Instead, they appear to suggest that the Individual Defendants' conduct exceeded the bounds of Pearland ISD's normal disciplinary measures.

---

[5] Plaintiffs make several arguments in their response concerning my potential reliance on certain documents attached to the Individual Defendants' Motions to Dismiss. Because I do not rely on those extrinsic documents, I need not rule on Plaintiffs' objections. Further, Plaintiffs argue that they need to conduct discovery, but there is no amount of discovery that would change the unmistakable fact, discussed in detail below, that Section 101.106(f) bars Plaintiffs from proceeding against the Individual Defendants on a state law assault claim.

6

This type of challenge is not sufficient to overcome Section 101.106(f)'s first element. As explained by one Texas Court of Appeals:

> Conduct that serves any purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted. . . . But conduct that is better viewed as a deviation from an assigned task instead of an escalation beyond what was authorized is not within the employee's scope of employment.

*Fink v. Anderson*, 477 S.W.3d 460, 466–67 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In applying this standard, "the pertinent question [i]s not whether [coloring J.T.'s scalp while laughing] was within [the Individual Defendants'] scope of employment but, rather, whether [the Individual Defendants'] general conduct, i.e., [disciplining a student for a dress code violation], was conduct that served any purpose of [Pearland ISD]." *Elias v. Griffith*, No. 01-17-00333-CV, 2018 WL 3233587, at *9 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.). The Individual Defendants' conduct in disciplining J.T. for an alleged dress code violation clearly served a purpose of Pearland ISD. At most, Plaintiffs' argument concerns an escalation and not a deviation from the Individual Defendants' job duties. Accordingly, I find that the first element of Section 101.106(f) is satisfied.

### 2. Could Have Been Brought Under the Act

The second element that the Individual Defendants must establish to avail themselves of Section 101.106(f)'s protection is that Plaintiffs could have brought the assault claim against Pearland ISD under the Act. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f). Plaintiffs do not even attempt to challenge this element. The Individual Defendants easily clear this low hurdle because under Texas law "all tort claims, including

intentional torts, 'could have been brought' against the governmental unit, regardless of whether the governmental unit's immunity from suit is expressly waived by the Texas Tort Claims Act for those claims." *Newton v. Joseph*, No. 1:13-CV-510, 2016 WL 3749120, at *2 (E.D. Tex. July 13, 2016), *rev'd on other grounds*, 718 F. App'x 256 (5th Cir. 2018). *See also Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (finding that, based on the holding in *Franka*, the plaintiff's intentional tort claims—including assault, false arrest, and malicious prosecution—could have been brought under the Act against the government).

\*\*\*

In sum, since both elements of the test for Section 101.106(f)'s applicability are met, statutory immunity applies, and Plaintiffs' assault claim and this suit should be dismissed.[6]

## CONCLUSION

For the reasons explained above, I **RECOMMEND** that the Individual Defendants' Motions to Dismiss (Dkts. 49–51) be **GRANTED** and that this suit be **DISMISSED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections

---

[6] Section 101.106(f) contemplates that Plaintiffs could have substituted Pearland ISD for the Individual Defendants. Plaintiffs did not, however, bring the state law assault claim against Pearland ISD. Even if Pearland ISD had been substituted for the Individual Defendants, the assault claim would have failed because Pearland ISD is protected by governmental immunity and "[n]o waiver of immunity is available for claims 'arising out of assault . . . or any other intentional tort.'" *See Matthews v. Harris Cty.*, No. CV H-18-0014, 2018 WL 3818001, at *3 (S.D. Tex. Aug. 10, 2018) (quoting TEX. CIV. PRAC. & REM. CODE § 101.057).

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 10th day of July, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE